## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

PAULA BUDEK,

      Plaintiff,

v.                                      Case No:   2:15-cv-137-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## OPINION AND ORDER

Plaintiff Paula Budek seeks judicial review of an administrative decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security disability insurance benefits ("DIB").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

### I.      Issues on Appeal

Plaintiff raises two issues on appeal:[1] (1) whether substantial evidence supports the finding of Administrative Law Judge Larry J. Butler (the "ALJ") at step two, which did not include Plaintiff's rheumatoid arthritis as a severe impairment;

---

[1] Any issue not raised by the Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.,* 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

and (2) whether the ALJ properly determined that Plaintiff could perform her past relevant work as an office manager. Because the decision of the Commissioner is supported by substantial evidence and the proper legal standards were employed, the Court will affirm the ALJ's decision on both issues.

## II.   Background and Summary of the ALJ's Decision

Plaintiff was fifty years old on December 31, 2005, her date last insured. Tr. 90, 102. She completed high school and previously worked as an office manager for her husband's business. Tr. 30-32, 116. On December 30, 2010, Plaintiff protectively filed an application for DIB alleging she became unable to work as of December 21, 2000 due to rheumatoid arthritis, back problems, carpal tunnel syndrome, thyroid problems and fibromyalgia. Tr. 58, 90-91, 105. The Social Security Administration ("SSA") denied her applications initially and upon reconsideration. Tr. 62-65, 69-70. Plaintiff then requested and received a hearing before an ALJ on February 11, 2013, during which she was represented by an attorney. Tr. 25-50. Plaintiff testified at the hearing. *Id.*

On August 8, 2013, the ALJ issued his decision, finding Plaintiff not disabled and denying her claim. Tr. 12-20. The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2005. Tr. 14. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from December 21, 2000, the alleged onset date, through December 31, 2005, the date last insured. *Id.* At step two, the ALJ determined that Plaintiff had "the following severe impairments: degenerative osteoarthritis, history

of hyperlipidemia, hypothyroidism, low back pain with degenerative changes and sciatic, lumbar spondylosis, lumbar radiculitis, and right sacroiliitis.  *Id.*  At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 16.

After consideration of the entire record, the ALJ then determined that through the date she was last insured – December 31, 2005 – Plaintiff had the RFC to perform light work, with some non-exertional limitations.[2]  Tr. 16, 20.   He found that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls.   Tr. 16.   He further found she could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and could occasionally climb ladders, ropes, and scaffolds. The ALJ noted that "frequently" is defined as less than 2/3 of an

---

[2] The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

8-hour workday and "occasionally" is defined as less than 1/3 of an 8-hour workday. *Id.*

Next, at step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an office manager as it was generally performed.   Tr. 20. Under the Dictionary of Occupational Titles ("DOT"), this position is classified as sedentary[3] work, which is performed at a lower physical exertion requirement than light work.   *Id.*, *see* 20 C.F.R. § 404.1567 (classifying jobs as sedentary, light, medium, heavy and very heavy).   Thus, the ALJ concluded that Plaintiff's ability to perform light work "allows her to perform work at an equal or lesser exertional level," and thus she had not been under a disability within the meaning of the Social Security Act from December 21, 2000 through December 31, 2005.   Tr. 20. Recognizing that "[l]ike many who appeal Social Security decision, the claimant may now be ill" and noting he was sympathetic to her situation, the ALJ observed that "disability is essentially a medical determination, [and t]he claimant cannot establish a disability without some medical evidence as to her condition during the relevant time period through the date last insured of December 31, 2005."   Tr. 19.

Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied on January 5, 2015.   Tr. 1-5.   Accordingly, the

---

[3] The regulations define "sedentary work" as follows:   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

April 30, 2013 decision is the final decision of the Commissioner.   On March 3, 2015, Plaintiff timely filed her Complaint with this Court.   Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that

"[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner, 2015 WL 1453364* at *2 (11th Cir. 2015), *citing Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971).

## IV. Analysis

### A. The ALJ's determination of the severity of Plaintiff's rheumatoid arthritis at step two

Plaintiff argues that the ALJ should have found Plaintiff's rheumatoid arthritis to be a severe impairment at step two of the sequential evaluation process. She argues that the ALJ improperly applied a higher severity standard when making this decision. Doc. 24 at 5-6. Defendant responds that the ALJ found that Plaintiff had at least one severe impairment at step two, and, further, that he considered

Plaintiff's rheumatoid arthritis at other steps in the process, which "is all he was required to do."   Doc. 25 at 5.   In addition, the Commissioner asserts that Plaintiff also failed to show that her rheumatoid arthritis caused greater limitations in her ability to work.   *Id.*   The Court, having reviewed the record, the applicable law, and the decision of the ALJ, agrees with the Commissioner.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   If the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three.   *See* 20 C.F.R. § 404.1520(a)(4).   This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."   *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).   This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five).   *Id.*, *see* 20 C.F.R. § 404.1520(a)(4).   Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work.   *Bowen v. Yuckert*, 482 U.S. 146 at 146 n.5 (1987).   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.

20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Here, as noted above, the ALJ determined at step two that Plaintiff suffered from at least one severe impairment.   Tr. 14.   Specifically, he found Plaintiff had severe impairments of degenerative osteoarthritis, history of hyperlipidemia, hypothyroidism, low back pain with degenerative changes and sciatic, lumbar spondylosis, lumbar radiculitis, and right sacroiliitis.   *Id.*   He then proceeded through the sequential evaluation, specifically discussing Plaintiff's records concerning her rheumatoid arthritis (Tr. 17-18) before determining she had the ability to perform her past relevant work as an office manager.   *See* Tr. 16-20.

The undersigned has reviewed the record and concludes that substantial evidence supports the ALJ's decision not to include rheumatoid arthritis as a severe impairment.   Furthermore, there was no error in doing so because the ALJ found other severe impairments and proceeded with the sequential evaluation process. When considering his RFC analysis, the ALJ accurately summarized all of the records concerning Plaintiff's rheumatoid arthritis diagnosis, discussed below.   *See* Tr. 17-18.

In a general physical performed on August 27, 2001, Plaintiff first reported that she had been diagnosed with rheumatoid arthritis 23 years earlier after her only child was born.   Tr. 578.   Her physician, Robert Wagar, M.D., in the internal

medicine department of the Cleveland Clinic Florida, noted that was the reason she was taking Ketoprofen.[4]   *Id.*   During that visit, she complained of joint problems in her hands, hips, knees and right foot.   *Id.*   The physical examination showed no significant crepitus of the knees and no edema.   Tr. 579.   Dr. Wagar then referred Plaintiff to the department of rheumatology at the Cleveland Clinic for a consultation with Dr. Thomas Osborn, M.D.   Tr. 576-77.   Dr. Osborn noted that Plaintiff never had been on any rheumatoid remitting drugs.   Tr. 576.   He further observed she never developed any worsening symptoms, had no family history of rheumatoid arthritis, never had persistent swelling or rheumatoid nodules, never was treated with typical rheumatoid arthritis medications, and her blood tests have always remained negative for rheumatoid factors, e.g., seronegative.   Tr. 576-77.   Dr. Osborn retested Plaintiff, and blood tests confirmed she was seronegative.   He concluded there was

> [n]o evidence [of] rheumatoid arthritis.   I believe this was a misdiagnosis.   She does have some very mild osteoarthritis, normal for age, principally in her left knee.

Tr. 577.   Dr. Osborn continued Plaintiff on Oruvail, as needed for joint pain "when she overdoes it."   *Id.*   Plaintiff next visited Dr. Wagar on July 1, 2002 for a follow-up examination, during which she reported still having aches and pains but that taking the Oruvail on a regular basis was beneficial.   Tr. 574.   The ALJ noted a gap in Plaintiff's history of treatment (Tr. 18), as she did not appear to return for treatment until January 27, 2005, when she was assessed with osteoarthritis, among

---

[4] Ketoprofen is a nonsteroidal anti-inflammatory drug. Tr. 578.   *See also* http://www.drugs.com/cdi/ketoprofen.html.

other ailments.   Tr. 569.   Plaintiff next returned to Dr. Wagar on September 12, 2005 with complaints of multiple joint aches, particularly in her left knee, reporting that her pain was worsening.   Tr. 567.   Her left knee was slightly warm, which Dr. Wagar stated may demonstrate a small amount of fluid.   *Id.*   Dr. Wagar assessed that Plaintiff's condition was likely due to her osteoarthritis; however, he ordered full laboratory testing for autoimmune dysfunction.   *Id.*   In a follow-up visit on September 26, 2005, Dr. Wagar reported that the lab tests showed Plaintiff had a normal sedimentation rate and normal connective tissue parameters.   Tr. 565.   He returned her to the Oruvail, which he found to be more effective than other medications, and noted that she had been "much more active than usual, chasing around a toddler grandchild." *Id.*   Dr. Wagar diagnosed Plaintiff with osteoarthritis and hypothyroidism.   *Id.*

Plaintiff initially had a neurological consultation with Dr. Michael Vickers on November 29, 2005, and a summary report of his findings to her primary care physician, Donald DiPasco, M.D., is part of the record.   *See* Tr. 211-13.   Dr. Vickers noted that Plaintiff reported intermittent back pain for some time but that in the two months preceding her visit she developed more severe back pain that radiated into both legs, but more so in the right one.   Tr. 211.   Plaintiff denied any inciting trauma or event that caused the exacerbation.   *Id.*   She did note that the pain worsened with activity, particularly the lower extremity pain, and her lower back hurt when she was seated in one position for an extended period of time.   *Id.*   She also described having a burning, tingling pain in her lower extremities when lying

down at night, which disrupted her sleep, and that getting up and walking around somewhat alleviated her symptoms.   *Id.*   Dr. Vicker's examination revealed bilateral tenderness in the lower lumbar spine and decreased range of motion.   Her straight leg raise was negative.   Tr. 212.   Although his examination revealed that Plaintiff had sensory motor changes that seemed limited to the S1 lower lumbar region, overall her neurological examination was normal.   Tr. 212-13.   Plaintiff was able to rise from a chair with both arms crossed; and her heel, toe and tandem gaits were adequately performed.   Tr. 213.   A previous MRI showed evidence of multilevel lumbar degenerative disc disease, spondylosis and some neuroforaminal involvement.   *Id.*   Dr. Vickers noted that some of Plaintiff's symptoms were consistent with restless leg syndrome. *Id.*   He recommended further testing and therapeutic considerations.   *Id.*

On December 7, 2005, Plaintiff underwent a nerve conduction study (Tr. 215-24), which revealed evidence of chronic bilateral L5 radiculopathies and mild right S1 radiculopathy.   Tr. 215.   Dr. Vickers opined that these findings were mild and that her symptoms were more compelling for facet joint inflammation than for radiculopathy.   Tr. 210.   Dr. Vickers discontinued Plaintiff's Lyrica and started her on Cymbalta.   *Id.*

After reviewing and discussing in detail these and other records concerning Plaintiff's complaints of lumbar spine and knee pain, including x-rays of her knees, which revealed very early degenerative osteoarthritic change of the left knee, and an MRI of her lumbar spine (Tr. 18), the ALJ noted:   "The record lacks the type of

clinical, diagnostic, and laboratory abnormalities one would expect to find of a completely disabled individual." Tr. 18. While he noted the record shows Plaintiff was treated with medications, physical therapy, pain injections and other treatment for her allegedly disabling symptoms, which he stated normally would weigh somewhat in her favor for purposes of disability, "the record also reveals that the treatment and medications have been generally successful in controlling those symptoms." Tr. 19 (summarizing reports in Plaintiff's medical records that medication, an SI joint belt, and injections gave her some relief, and that in March 2006 she reported only minimal pain in her right leg and some low back pain).

The ALJ considered the medical assessment of Plaintiff's ability to do work-related activities of Dr. Michael Vickers dated December 3, 2012 and gave it little weight, finding that "it does not appear to indicate that this was her level of functioning prior to the date last insured but rather addresses her current level of functioning." Tr. 19. The ALJ further noted, however, to the extent the "opinion specified [Plaintiff's] level of functioning prior to the date last insured the opinion is not accepted because it is not consistent with or supported by the medical evidence of record during that relevant time period." Tr. 19-20. The ALJ gave great weight to the RFC assessment of State agency medical consultant, Dr. Olga M. Garcia, as he found her opinion consistent with and supported by the medical record as a whole, including physical exams and diagnostic test resulting. Tr. 19, 528-35.

While Plaintiff does not challenge the weight given to Dr. Garcia assessment, she argues that Dr. Garcia also found that Plaintiff had rheumatoid arthritis and

that this condition constituted a severe impairment on and before Plaintiff's date last insured.   Doc. 24 at 7.   Nonetheless, a severe impairment is an impairment or combination of impairments that significantly limits a claimant's ability to do basic work activities.   20 C.F.R. § 404.1520(c).   Diagnosis alone of a condition does not speak to whether the condition affects a claimant's ability to work.   *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986).   As noted by the Eleventh Circuit, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."   *Id.*   Dr. Garcia's RFC finding that Plaintiff could perform a range of light work (Tr. 529-35) is consistent with that of the ALJ.   Tr. 19.

Similarly, Plaintiff's argument that because her treating physicians, Dr. Harley Cohen and Dr. Jeffrey Alper, consistently have diagnosed her with rheumatoid arthritis it constitutes a severe condition misses the mark if Plaintiff has not demonstrated how the condition caused greater functional limitations than the ALJ's RFC finding.   *McCruter,* 791 F.2d at 1547; *Johns v. Bowen,* 821 F.2d 551, 555 (11th Cir. 1987).   And, as noted by the ALJ and addressed by the Commissioner, even if the treatment notes of Dr. Cohen and Dr. Alper reflect Plaintiff's rheumatoid arthritis became more severe and limiting after December 2005, this is insufficient to show she is eligible for disability insurance benefits.   Tr. 19-20, Doc. 25 at 8-9.   To be eligible for disability insurance benefits, Plaintiff must show she became disabled prior to the expiration of her insured status.   *Moore v. Barnhart,* 405 F.3d 1208, 1211

(11th Cir. 2005); *see* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. § 404.101, .130, .131. Thus, the Court finds that the ALJ's decision is supported by substantial evidence in the record and he applied the proper legal standards.

Additionally, the ALJ found in Plaintiff's favor at step two of the sequential evaluation process by finding that she had multiple severe impairments.   Tr. 14. The ALJ then proceeded with the other steps of the sequential evaluation process and found Plaintiff could perform her past relevant work as an office manager as it is generally performed.   Tr. 20.   As the Eleventh Circuit has stated, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."   *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).   Thus, the ALJ's findings were not in error.

### B. The ALJ's determination of Plaintiff's past relevant work as an office manager.

Plaintiff next argues that the ALJ erred by failing to find Plaintiff's past relevant work as an office manager was a "composite" job, that is, one that is comprised of significant elements of two or more occupations.   Doc. 24 at 8.   As such, Plaintiff asserts the ALJ may not rely upon vocational resource materials alone, and it may be necessary to utilize the services of a vocational expert or specialist.   *Id.* The Commissioner responds that Plaintiff's office manager job did not involve significant elements of other jobs as to remove it from the bounds of DOT's description of office manager:   organizing office operations, requisition of supplies, bookkeeping, and supervising.   *See* DOT § 169.167-034.   While Plaintiff contends her job at times also consisted of stocking and unloading trucks and running errands, attributing

these other activities to running a business (Tr. 31), her testimony and work history report show activities consistent with that of a typical office manager – running the office shop area of the business, performing the bookkeeping, performing scheduling, supervising employees and telephone work.   Tr. 31, 117.   Moreover, as accurately pointed out by the Commissioner, the Plaintiff must show that she could not perform her past relevant work as it is generally performed in the national economy as well as how she actually performed it.   Doc. 25 at 13, citing SSR 82-61; SSR 82-62. Comparing Plaintiff's RFC with the physical and mental demands of the job, the ALJ found Plaintiff could perform her past relevant work as generally performed.   He further noted:   "The claimant's ability to perform light work allows her to perform work at an equal or lesser exertional level. . . ."   T. 20.   Substantial evidence supports the ALJ's determination.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 2nd day of March, 2015.


CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record